WILLIAM L. SCHMIDT, SBN 206870[1]
legal.schmidt@gmail.com
WILLIAM L. SCHMIDT, ATTORNEY
AT LAW, P.C.
P.O. Box 25001
Fresno, CA 93729
Telephone: (559) 261-2222
Facsimile: (559) 436-8163

R. SHANE JOHNSON, USB # 14217
shane@utahdefense.com
R. SHANE JOHNSON, PLLC
24 D Street
SALT LAKE CITY, UTAH 84103
Telephone: (801) 364-2222

STEWART GOLLAN, USB # 12524
sgollanlaw@gmail.com
GOLLAN LAW PLLC
584 Wall Street
Salt Lake City, Utah 84103
Telephone: (801) 413-3406

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| RONALD MAY, TOBY GARCIA, TODD MULDER, and CURTIS ELLIS, individuals, <br><br> *Plaintiffs*, <br><br> -*v*- <br><br> UTAH DEPARTMENT OF CORRECTIONS; MIKE HADDON, UDOC Interim Executive Director, in his official capacity; TONY WASHINGTON, UDOC Clinical Services Director, in his individual and official capacities; and DOES 1-10, inclusive, <br><br> *Defendants*. | **PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY RELIEF AND INJUNCTIVE RELIEF** <br><br><br> Civil Action No. 2:18-cv-00854-RJS-CMR <br><br> Judge Robert J Shelby <br> Magistrate Cecelia M. Romero |

---

[1] Admitted *Pro Hac Vice*

## INTRODUCTION

The Defendants have created and maintained a policy, custom, or practice of systematically denying necessary medical care to inmates diagnosed with Hepatitis C viral infections ("HCV") for which a total cure through a short medication regimen has become available, thereby discriminating against them and placing them at substantial and unnecessary risk for severe pain, liver failure, cancer, other illness, injury, and death.

The medical standard of care now requires treatment for all such patients with the direct-acting antiviral ("DAA") drugs that became available in 2011. The failure to provide treatment also creates the potential for further spreading of the disease both within the prison system and to the general public. These actions amount to deliberate indifference to the serious medical needs of Utah Department of Corrections ("UDOC") prisoners with HCV.

The Plaintiffs bring this action seeking prospective relief on behalf of themselves and a class of similarly situated individuals to remedy the ongoing deprivation of their rights guaranteed by the Eighth Amendment of the United States Constitution (as incorporated by the Fourteenth Amendment), the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA"). In addition, the Plaintiffs seek an award of damages for the harm caused to them by the violation of their constitutional and statutory rights to life-saving treatment.

## JURISDICTION

1.     This Complaint asserts causes of action arising under the U.S. Constitution and the laws of the United States. Pursuant to 42 U.S.C. §1983, the Plaintiff alleges causes of action for the infliction of cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution. The Plaintiffs' claims are also brought pursuant to the Americans with Disabilities Act and the Rehabilitation Act.  The Plaintiff also seeks declaratory and injunctive relief authorized by 28 U.S.C. §§2201 and 2202, as well as Federal Rule of Civil Procedure 65, to compel needed medical treatment without further delay.

2.     This Court has subject matter jurisdiction over the Plaintiff's federal law claims pursuant to 28 U.S.C. §1331.

## VENUE

3.     A substantial part of the acts and omissions giving rise to the Plaintiffs' claims occurred in the Utah Judicial District. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b).

## THE PARTIES

4.     Plaintiffs RONALD MAY, TOBY GARCIA, TODD MULDER, and CURTIS ELLIS (collectively "Plaintiffs") are all adult individuals currently incarcerated by the UDOC. They each have HCV, and they have been denied curative treatment with DAA medications.

5.     Defendant UTAH DEPARTMENT OF CORRECTIONS ('UDOC") is a public entity and is responsible for providing treatment for the serious medical needs of

individuals in its custody. Defendant UDOC is a public entity under Title II of the ADA and receives federal financial assistance within the meaning of the RA.

6.    Defendant MIKE HADDON ("HADDON") is the Interim Executive Director of Defendant UDOC, acting within the scope of that agency or employment and under color of state law. Defendant HADDON is responsible for the operations of Defendant UDOC, including adopting, approving, and implementing the policies applicable to the prisons operated throughout the State of Utah. Defendant HADDON has a duty to provide constitutionally adequate medical care to all persons in his custody. He is sued in his official capacity for injunctive and declaratory relief. HADDON has the authority to implement the relief sought in this Complaint.

7.    Defendant TONY WASHINGTON ("WASHINGTON") is the UDOC Clinical Services Director, acting within the scope of that agency or employment and under color of state law. Defendant WASHINGTON is responsible for the operation of Defendant UDOC's health care services for inmates, including adopting, approving, and implementing the policies applicable to the prisons operated throughout the State of Utah. Defendant WASHINGTON is a policymaker for Defendant UDOC. He is sued in his individual and official capacities.

8.    Defendant DOES 1-10 are and/or were agents, employees, agencies, and/or entities of the named Defendants, and acted within the scope of that agency or employment and under color of state law. The true and correct names of the DOE Defendants are presently unknown to Plaintiffs and they are thus sued by their fictitious names. Their true and correct names will be substituted when ascertained.

4

**JURY DEMAND**

9.     Plaintiffs demand a jury trial on all claims triable to a jury.

**GENERAL ALLEGATIONS**

*Hepatitis C and Its Symptoms*

10.     HCV is a blood-borne disease. The virus causes inflammation that damages liver cells and is a leading cause of liver disease and liver transplants.

11.     HCV is transmitted by infected blood via several methods, including intravenous drug use and tattooing using shared equipment, and sexual activity. Intravenous drug use is the most common means of HCV transmission in the United States.

12.     HCV can be either acute or chronic. In people with *acute* HCV the virus will spontaneously clear itself from the blood stream within six months of exposure. In contrast, c*hronic* HCV is defined as having a detectable viral level in the blood at some point six months or more after exposure. A substantial majority of infected people will develop chronic HCV.

13.     Liver inflammation caused by chronic HCV can significantly impair liver function and damage its crucial role in digesting nutrients, filtering toxins from the blood, fighting infection, and conducting other metabolic processes in the body. Liver inflammation can also cause fatigue, weakness, muscle wasting, skin rashes, and arthritis.

14.     People with chronic HCV develop *fibrosis* of the liver, a process by which healthy liver tissue is replaced with scarring. Scar tissue cannot perform the job of

5

normal liver cells. So, fibrosis reduces liver function and results in the same symptoms

mentioned above, but with greater intensity. Fibrosis can also lead to hepatocellular

carcinoma (liver cancer).

15.   When scar tissue begins to take over most of the liver, this extensive fibrosis

is termed *cirrhosis*. Of those with chronic HCV, the majority will develop chronic liver

disease and approximately 20% will develop cirrhosis within a 20-year timeframe.

16.   Cirrhosis causes additional painful complications, including widespread

itching, kidney disease, jaundice, fluid retention with edema, internal bleeding, varices

(enlarged veins that develop in the esophagus or intestines, which can burst), easy

bruising, ascites (fluid accumulation in the legs and abdomen), encephalopathy (mental

confusion and disorientation), lymph disorders, increased risk of infection, seizures,

and extreme fatigue. Most of these complications can occur before cirrhosis. If they go

untreated, some can cause death, often from infection, bleeding, and fluid

accumulation.

17.   Abdominal ascites can require paracentesis, a procedure wherein a needle is

inserted into the abdomen to drain the accumulating fluid. Without this periodic

procedure, the fluid accumulation can decrease the available space for the patient's

lungs, thus causing shortness of breath and difficulty breathing.

18.   Moreover, once an HCV patient's liver has cirrhosis, it may not be reversible.

Some patients with cirrhosis may have too much scar tissue in the liver, even if the liver

can heal to some degree once the virus is eliminated via treatment. If scar tissue persists,

the patient may still experience the complications of cirrhosis, including liver cancer.

19.   Cirrhosis that is accompanied by serious complications is known as *decompensated* cirrhosis and cirrhosis without serious complications is called *compensated* cirrhosis.

20.   HCV is a physiological disorder or condition that affects one or more body systems, including but not limited to the digestive, gastrointestinal, immune, circulatory, cardiovascular, and hemic systems, and is therefore a physical impairment. This physical impairment substantially limits one or more major life activities, including but not limited to eating, walking, bending, lifting, concentrating, thinking, and communicating; the operation of major bodily functions such as digestive, gastrointestinal, immune, circulatory, cardiovascular, and hemic systems; and the operation of the liver.

21.   There is a record of impairment for all UDOC prisoners who have been diagnosed with HCV and the UDOC regards them as having a physical impairment that limits one or more major life activities.

***General Prevalence of Hepatitis C***

22.   In 2000, the U.S. Surgeon General called HCV a "silent epidemic" and estimated that as much as 2% of the adult population had HCV. In 2013, it caused more deaths than 60 other infectious diseases combined, including HIV, pneumococcal disease, and tuberculosis.

23.   Approximately 19,000 people die of HCV-caused liver disease in the U.S. every year and it is the leading indication for liver transplants in the U.S.

24.   Of those with chronic HCV, at least half will develop cirrhosis or liver cancer.

*Standard of Care for HCV*

25.   For many years there were no universally safe and effective treatments for HCV. The standard treatment prior to 2011, which included the use of interferon and ribavirin medications, had a long duration (up to 48 weeks), failed to cure most patients, and was associated with numerous side effects, including psychiatric and autoimmune disorders, flu-like symptoms, gastrointestinal distress, skin rashes, and severe anemia. Plus, not all drug regimens worked for all types of HCV, and many could not be given to patients with other comorbid diseases.

26.   That all changed in 2011 when the Food and Drug Administration ("FDA") began approving new oral medications called direct-acting antiviral ("DAA") drugs. These drugs work faster, cause fewer side effects, and treat chronic HCV more effectively. Initially, they were designed to work with the old treatment regimen. But in 2013 the FDA began to approve DAA drugs that can be taken alone.

27.   These drugs, which include Sovaldi, Olysio, Harvoni, Viekira, Pak, Daklinza, Technivie, Zepatier, and Epclusa, have far fewer side effects, dramatically greater efficacy, a shorter treatment duration of 12 weeks, and are administered orally with a once-daily pill. Most importantly, 90 to 95% of HCV patients treated with these new drugs are cured. The prior medications only helped about one-third of patients.

28.   A cure of HCV is defined as a sustained virologic response ("SVR"), which means that there is no detectable HCV genetic material in the patient's blood for three months following the end of treatment.

8

29.   In response to the new DAA medications, the American Association for the Study of Liver Diseases ("AASLD") and the Infectious Disease Society of America ("IDSA") formed a panel of experts to conduct an extensive review of the testing, management, and treatment of HCV. The results were published in a comprehensive document called the HCV Guidance which is available at www.hcvguidance.org (last visited May 5, 2019). The Centers for Disease Control and Prevention ("CDC") encourages all health professionals to follow the evidence-based standard of care developed by the IDSA/AASLD.

30.   The IDSA/AASLD guidelines now set for the medical standard of care for the treatment of HCV. The guidelines recommend immediate treatment with DAA drugs for all persons with chronic HCV. This is the standard of care for the treatment of HCV and it reflects the continuing medical research showing the dramatic benefits of the DAA drugs.

31.   Since 2016, all 50 states have covered at least one of the DAA treatment regimens that serve as the current standard of care for HCV treatment for their Medicaid patients. The benefits of immediate treatment include immediate decrease in liver inflammation, reduction in the rate of progression of liver fibrosis, reduction in the likelihood of the manifestations of cirrhosis, a 70% reduction in the risk of liver cancer, a 90% reduction in the risk of liver-related mortality, and a dramatic improvement in quality of life. Delay in treatment increases the risk that the treatment will be ineffective.

*Screening, Diagnosis, and Monitoring of HCV*

32.   Under the IDSA/AASLD guidelines, all persons with risk factors for HCV infection should be offered testing for HCV. This includes all persons who were ever incarcerated or who were born between 1945 and 1965.

33.   A person is generally diagnosed with HCV through a rapid blood test in which the blood is examined for HCV antibodies. A follow-up test can determine whether the genetic material for HCV remains in the blood. A third blood test can reveal which genotype of HCV a person has.

34.   Although the standard of care is to treat all persons with chronic HCV with DAA drugs, it is still useful to determine the progression of fibrosis and/or cirrhosis in the liver to choose the appropriate DAA drug, to treat other conditions or complications, to screen for liver cancer, to advise patients about contraindications and drugs to avoid, and to determine whether liver transplantation is necessary.

35.   The level of cirrhosis or fibrosis in a patient can be determined in several ways, including a liver biopsy, blood tests and ultrasound. The APRI blood test computes a ratio between the level of the AST enzyme in the blood with the usual amount in a healthy person. A score above 0.7 indicates significant fibrosis and a score above 1.0 indicates cirrhosis. The FIB-4 blood test computes a ratio using two enzymes, platelet count and a person's age. Ultrasound has been historically unreliable, but a new version called FibroScan appears to be more accurate in assessing fibrosis.

36.   No one single test will accurately determine the extent of liver damage. Normal results in isolation cannot rule out fibrosis or cirrhosis. For instance, the APRI

blood test has significant limitations. Low and mid-range scores may miss many people who have significant fibrosis or even cirrhosis.

*__UDOC's Unlawful Policy and Practice of Denying Treatment for HCV__*

37.   Despite the clear agreement in the medical community that all persons with HCV should be treated with DAA drugs, the UDOC does not provide these lifesaving medications to every prisoner diagnosed with HCV. Instead, the UDOC has a policy, custom, and practice of not providing DAA medications to prisoners with HCV, in contravention of the prevailing standard of care and in deliberate indifference to the serious medical needs of prisoners with HCV.

38.   This policy, practice, and custom has caused, and continues to cause, the unnecessary and wanton infliction of pain and unreasonable risk of serious damage to the health of UDOC prisoners with HCV.

39.   Under the UDOC HCV treatment protocol (revised 10/30/17) almost no prisoners receive DAA medications. Overwhelmingly, UDOC tracks prisoners with known HCV infection and periodically tests them but does not actually treat them. The protocol states that the UDOC is "seeking special funding to support the treatment with new HCV medications due to the tremendous financial burden…" and "Only the most ill patients will qualify for treatment as funding is approved by the state legislature." Finally, in contravention of the current standard of care, the protocol states that "Not everyone with hepatitis C needs treatment right away."

40.   Because the standard of care is to treat everyone, without regard to the stage of the disease, Defendants' written policy of only providing treatment to patients with

the most advance stages of the disease amounts to deliberate indifference to serious medical needs, in violation of the Eighth Amendment to the U.S. Constitution and Article 1, Section 9 of the Utah Constitution. It is not consistent with the standard of care. Delaying treatment until a patient is extremely sick has the perverse effect of withholding treatment from the patients who could benefit the most from it, because the treatment is less effective for patients with the most advanced stages of the disease.

41.   But even if the policy were adequate, the UDOC does not follow it because it provides treatment to almost none of the HCV-positive inmates in its custody. Upon information and belief, because the Defendants does not routinely test all inmates for HCV, they may be failing to treat many more inmates than they are even aware of.

42.   Since 2013, the year the FDA approved DAA medications that cure HCV, on information and belief, UDOC prisoners have died of chronic liver disease, cirrhosis, and other diseases of the digestive system. Since HCV is the most common cause of liver failure in the country, it is likely that most of these deaths were due to chronic HCV. On information and belief, past and current practices of the Defendants are resulting in deaths that could have been prevented through treatment of HCV.

43.   The UDOC also unjustifiably delays providing HCV treatment, even though the standard of care requires treatment as early as possible. If DAA treatment is delayed until a patient has advanced fibrosis or cirrhosis, these medications can be significantly less effective. Moreover, if DAA treatment is delayed until a patient develops decompensated cirrhosis, a liver transplant preceded or followed by DAA treatment is the only way to cure the patient.

12

44.   In practice, the UDOC appears to have a goal of delaying treatment for virtually all patients with HCV, regardless of their disease progression, until the patient is released from prison or dies.

45.   Upon information and belief, the UDOC does not screen HCV-positive prisoners with advanced fibrosis and cirrhosis for liver cancer. Unless there is regular surveillance to find cancers early and remove them surgically, liver cancer has a very dismal prognosis.

46.   Upon information and belief, the UDOC does not include routine op-out testing for HCV. Thus, UDOC does not even know the full number of UDOC prisoners who have HCV.

47.   The UDOC has enforced its policies, practices, and customs regarding HCV treatment despite knowing that the failure to provide DAA medications to prisoners with HCV subjects those prisoners to an unreasonable risk of pain, liver failure, cancer, permanent damage to their health, and even death. The Defendants have acted with deliberate indifference to the serious medical needs of UDOC prisoners with chronic HCV.

48.   The Defendants will continue this course of conduct unless enjoined by this Court. The Plaintiffs have no adequate remedy at law.

### *Public Health Benefits of Treatment in Prison*

49.   Providing expanded HCV screening and DAA treatment in Utah's prisons would greatly reduce the number of new HCV cases in the community. Curing the disease while people are in prison would prevent prisoners from transmitting it when

released, and testing would diagnose numerous individuals who were unaware they were even infected.

50.   Studies have shown that providing DAA treatment to everyone with chronic HCV increases long term cost savings. There is also evidence that restricting DAA treatment access until patients were in the later stages of fibrosis actually results in higher per-patient costs because, while it may be initially less expensive to delay administering DAAs, over the course of treatment, the follow-up care outweighs the initial costs.

*Allegations Regarding Named Plaintiffs*

51.   Plaintiffs identified herein became infected and/or were diagnosed with HCV while under the care and supervision of the Defendants.

52.   Plaintiffs identified herein all experienced adverse symptoms of HCV while in the care and custody of UDOC and requested medical treatment at the prisons wherein they were incarcerated.

53.   Defendants and their agents and employees who have seen and denied treatment to Plaintiffs, and to each of those similarly situated prisoners within the care and custody of Defendants, have acted with deliberate indifference and have refused to treat Plaintiffs and each of them with DAA drugs in contravention of the prevailing standard of care.

54.   Plaintiffs and each of them are experiencing serious symptoms consistent with HCV symptoms. To date, Plaintiffs have not received the curative treatments readily available for treatment of their HCV.

14

55.    Plaintiffs have requested treatment multiple times. Each of the named

Plaintiffs has completed the UDOC's grievance process and been denied treatment with

DAAs.

Todd Mulder

56.    Todd Mulder was diagnosed with HCV in approximately 2001.

57.    He has been denied treatment with DAA medications, even though he has

experienced joint pain and fatigue.

58.    On July 19, 2018, Mulder submitted a Level I Grievance appealing

Defendants' refusal to provide him with HCV treatment. That grievance was denied on

August 1, 2018.

59.    In the denial of his Level I Grievance, Mulder was told: "The Department of

Corrections has limited funds for Hep C treatment, so it is reserved for those with

advanced disease. You do not meet the requirements within our protocol to be

considered for treatment. Your most recent live enzyme values are normal, they must

be double the normal value for 2 years before consideration, among other things."

60.    Mulder subsequently submitted a Level II grievance which was denied by

UDOC on August 29, 2018 on the same basis that his Level I Grievance was denied.

61.    Mulder submitted a Level III Grievance to UDOC on September 1, 2018,

which was again denied in a letter dated October 5, 2018. This letter acknowledged that

Mulder had exhausted the administrative remedies available to him and stated that no

further administrative review was available. It further stated that his only recourse was

to seek a judicial remedy.

62.   By submitting the grievances detailed above, which were denied, Mulder has satisfied the administrative exhaustion requirement imposed by the Prison Litigation Reform Act ("PLRA").

Curtis Ellis

63.   Ellis has been living with HCV for at least a dozen years. On May 26, 2018, he submitted a request to be treated for his HCV. He was told by Dr. Burnham that the state only allowed funding for 5 or 6 HCV patients in the UDOC to be treated with DAA medications each year.

64.   Ellis submitted Level I through III grievances to UDOC requesting HCV treatment.

65.   In response to his first-level grievance, Ellis received a written denial, dated June 19, 2018, from Nurse Jackman which stated, UDOC "simply does not have the funding to treat everyone" with HCV.

66.   In response to his level-two grievance Ellis was told by Nurse Peterson on July 17, 2018 that he was not eligible to receive treatment based on the UDOC protocol.

67.   After he submitted his third level grievance, Ellis received a letter dated August 29, 2018, from UDOC Administrative Services Director Steve Gehrke acknowledging timely receipt of his Level III grievance appealing the denial of his requests for HCV treatment, and notifying him that no further administrative review was available.

68.   By submitting the grievances detailed above, which were denied, Ellis has satisfied the administrative exhaustion requirement imposed by the PLRA.

Ronald May

69.   May was diagnosed with HCV in approximately 2000.

70.   May submitted level-one, level-two, and level-three grievances, the last of
which was submitted to UDOC on July 1, 2018.

71.   On July 6, 2018, May was informed by Defendant Tony Washington, Clinical
Services Bureau Director and final medical decision maker for UDOC, that any
treatment he could receive is governed by the established UDOC treatment protocol
which dictates that he is not eligible for treatment.

72.   May's submission of his level I, II, and III grievances satisfies the exhaustion
requirement of the PLRA.

Toby Garcia

73.   Garcia was diagnosed with HCV in the late 1990's. He is frequently plagued
with severe fatigue.

74.   In his level-one grievance dated April 29, 2018, Garcia sought treatment with
DAA medications. In a response dated May 24, 2018, Defendants denied his grievance
stating, in relevant part, "We do not have funds to treat everybody as the cost is very
high, it is reserved for those who are the most ill."

75.   On May 30, 2018 Garcia submitted a level-two grievance which was denied
on August 15, 2018.

76.   Garcia submitted a level-three grievance dated July 03, 2018 and received by UDOC on July 11, 2018.

77.   Subsequently, Garcia was notified by memo from Defendant Tony Washington, dated August 13, 2018, that he would only be provided HCV treatment pursuant to the UDOC established protocol under which he does not qualify. Thus, UDOC administrative officials responding to grievances have no authority to provide treatment to patients who do not qualify under the established protocol which contravenes the accepted standard of care for HCV patients.

78.   For the reasons stated above the exhaustion requirements of the PLRA have been satisfied.

### *Class Action Allegations*

79.   Pursuant to Federal Rule of Civil Procedure 23(b)(2), the Plaintiffs seek to certify a class of all current and future prisoners in UDOC custody who have been diagnosed, or will be diagnosed, with chronic HCV ("the "Plaintiff Class").

80.   Upon information and belief, Defendants have the ability to identify the similarly situated class members who are currently in custody of the UDOC through medical and other records in their possession.

81.   The requirements of Rule 23(a) are satisfied:

   a.   *Numerosity*: The class is so numerous that joinder of all members is impracticable. National estimates suggest that there are approximately 1000 inmates with HCV in the UDOC.

18

b.  *Commonality*: There are questions of law or fact common to this class, including but not limited to: 1) whether HCV is a serious medical need; 2) whether the Defendants' policy and practice of not providing HCV treatment constitutes deliberate indifference to serious medical needs in violation of the 8th Amendment; 3) whether the Defendants have knowingly failed to provide the necessary staging of HCV patients in accordance with the prevailing standard of care, including pretreatment testing to determine the severity of the disease; 4) whether the Defendants have knowingly employed policies and practices that unjustifiably delay or deny treatment for HCV; 5) whether Defendants have permitted cost considerations to improperly interfere with treatment of HCV; 6) whether HCV is a disability under the ADA; 7) whether medical services in prison are a program or service under the ADA; and 8) whether the Defendants have discriminated against UDOC prisoners with HCV on the basis of their disability by categorically denying them medical treatment, while providing treatment for other diseases and conditions such as HIV.

c.  *Typicality:* The claims or defenses of the class representatives are typical of claims or defenses of the class. The class representatives have been diagnosed with chronic HCV but have been refused treatment and suffer from the same kind of complications and substantial risk of serious harm that the class members suffer from.

d. *Adequacy*. The class representatives and class counsel will fairly and adequately protect the interests of the class. The class representatives are committed to obtaining declaratory and injunctive relief that will benefit themselves as well as the class by ending the Defendants' unconstitutional policy and practice. Their interests are consistent with and not antagonistic to the interests of the class. They have a strong personal interest in the outcome of the case and have no conflicts with class members. They are represented by attorneys who specialize in civil rights law and litigation on behalf of prisoners and who can vigorously prosecute this action.

82.   The requirements of Rule 23(b)(2) are satisfied, as the party opposing the class has acted and refused to act on grounds generally applicable to the class so that final declaratory and injunctive relief would be appropriate to the class as a whole. Injunctive relief will end the policy and practice for all class members, allowing them to receive proper medical evaluation and treatment for HCV.

## CAUSES OF ACTION

### FIRST CLAIM
### Right to Medical Care
### (8th Amendment to the U.S. Constitution; 42 U.S.C. §1983)

83.   The Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1 through 82 as though set forth fully at this point.

84.   Defendants know about and enforce the policies and practices described herein. They know of the serious medical needs of the Plaintiffs and the Plaintiff Class

and yet they have intentionally failed and refused to provide treatment that will address those serious medical needs, knowing that those actions have resulted, and will continue to result, in the Plaintiffs' and the Plaintiff Class's continued suffering and exposure to liver failure and it's symptoms, liver cancer, and death.

85.   The Defendants have caused the wanton infliction of pain upon UDOC prisoners with HCV and have exhibited deliberate indifference to the serious medical needs of Plaintiffs and the Plaintiff Class, all in violation of the Eighth Amendment.

86.   The Defendants know and have known of the substantial risk of serious harm, and actual harms, faced by UDOC prisoners with chronic HCV. Yet the Defendants have disregarded, and continue to disregard, those risks and harms by failing to provide the very medication that would alleviate those risks and harms. The Defendants have been deliberately indifferent to the substantial risk of serious harm to the UDOC prisoners with chronic HCV.

87.   By denying Plaintiffs and the Plaintiff Class their medically needed HCV treatment, the Defendants are imposing punishment far in excess of this authorized by law, contrary to the Eighth Amendment.

88.   The Defendants' denial of the Plaintiffs' and the Plaintiff Class's medically necessary HCV treatment violates all standards of decency, contrary to the Eighth Amendment.

89.   The Defendants' actions with respect to Plaintiffs and the Plaintiff Class amount to grossly inadequate care.

90.   The Defendants' actions with respect to Plaintiffs and the Plaintiff Class is medical care so cursory as to amount to no medical care at all.

91.   As a direct and proximate result of this pattern, practice, policy, and deliberate indifference, the Plaintiffs and the Plaintiff Class have suffered, and continue to suffer from harm and the violation of their Eighth Amendment rights. These harms will continue unless enjoined by this Court.

**SECOND CLAIM**
**Unnecessary Rigor**
**(Utah State Constitution, Article 1, Section 9)**

92.   Plaintiffs reallege and incorporate the allegations of paragraphs 1 to 91 as if fully set forth at this point.

93.   The Defendants and each of them were, at all times relevant, responsible for the health and well-being of the Plaintiffs.

94.   The Defendants were deliberately indifferent to the health of the Plaintiffs and the Plaintiff Class, as evidenced by their systematic failure and refusal to treat them in accordance with the reasonable standard of care for patients with HCV.

95.   Defendants affirmatively and consciously chose to provide no treatment, less-costly treatment, or less efficacious treatment to Plaintiffs, when Defendants knew to a certainty that the prevailing treatment would cure up to 95% of Plaintiffs, and thereby prevent unnecessary suffering on the part of Plaintiffs.

96.   Defendants have intentionally delayed or denied Plaintiffs' access to life-saving medication and medical treatment. Defendants have thereby deliberately and unnecessarily put uninfected prisoners at substantially greater risk of contracting HCV

and have caused uninfected prisoners to become infected with HCV due to their deliberate indifference.

97.   The Defendants have knowingly and deliberately put the Plaintiffs and the Plaintiff Class at risk for all of the known damages that can occur as a result of living with untreated HCV. This is the result of the express policies and practices of the Defendants. The actions and policies of the Defendants have unjustifiably caused substantial and serious injury to the Plaintiffs and the Plaintiff Class.

98.   The deliberate indifference of the Defendants has subjected the Plaintiffs and the Plaintiff Class to unnecessary rigor and proximately caused their substantial damages, including but not limited to: the denial of constitutional rights, physical pain, great mental anguish, the possibility of cancer and other maladies related to untreated HCV, and even premature death.

**THIRD CLAIM**
**Americans with Disabilities Act**
**(42 U.S.C. §12101, et seq.)**

99.   Plaintiffs reallege and incorporate the allegations of paragraphs 1 to 98 as if fully set forth at this point.

100.  Defendant UDOC is a "public entity" within the meaning of 42 U.S.C. §12131(1)(A) and 28 C.F.R. §35.104.

101.  All Plaintiffs and the Plaintiff Class have chronic HCV, which is a physiological disorder or condition that affects one or more body systems, including but not limited to the digestive, gastrointestinal, immune, circulatory, cardiovascular, and hemic systems, and is therefore a physical impairment within the meaning of 42

23

U.S.C. §12102(1) and (2) and 28 C.F.R. §35.108(c). This physical impairment substantially limits one or more major life activities, including but not limited to eating, walking, bending, lifting, concentrating, thinking, and communicating; the operation of major bodily functions such as digestive, gastrointestinal, immune, circulatory, cardiovascular, and hemic systems; and the operation of the liver.

102. All Plaintiffs and the Plaintiff Class have a record of having an impairment that substantially limits one or more major life activities, as they have a history of such an impairment. 42 U.S.C. §12102(1)(B); 28 C.F.R. §35.108(a)(1)(ii) & (e).

103. All Plaintiff and the Plaintiff Class are regarded by UDOC as having an impairment that substantially limits one or more major life activities, as UDOC perceives them as having such an impairment. 42 U.S.C. §12102(1)(C) & (3); 28 C.F.R. §l35.108(a)(1)(iii) & (f). Defendant UDOC has subjected them to a prohibited action because of an actual or perceived physical impairment.

104. All Plaintiffs and the Plaintiff Class are qualified individuals with a disability because they meet the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by UDOC, including but not limited to medical services. 42 U.S.C. §12131(2); 28 C.F.R. §35.104.

105. By withholding medical treatment from those with HCV, but not withholding medical treatment from those with other disabilities or those who are not disabled, the Defendants exclude Plaintiffs and the Plaintiff Class from participation in, and denies them the benefits of UDOC services, programs, and activities (such as medical services), by reason of their disability. 42 U.S.C. §12132; 28 C.F.R. §35.130a).

106.  By withholding medical treatment from those with HCV, but not withholding medical treatment from those with other disabilities or those who are disabled, the Defendants subject the Plaintiffs and the Plaintiff Class to discrimination. 42 U.S.C. §12132; 28 C.F.R. §35.130(a).

107.  The Defendants fails to provide Plaintiffs and the Plaintiff Class with equal access and enjoyment of effective medical services. 28 C.F.R. §35.130(b)(1).

108.  The Defendants utilize criteria and methods of administration that have the effect of subjecting Plaintiffs and the Plaintiff Class to discrimination and that defeat or substantially impair accomplishment of the objectives of medical treatment for HCV. 28 CF.R. §35.130(b)(3).

109.  The Defendants have known about the violations noted herein but have failed to correct them, thereby exhibiting deliberate indifference to the rights of the Plaintiffs and the Plaintiff Class.

110.  As a direct and proximate result of these actions and omissions, the Plaintiffs and the Plaintiff Class have suffered and continue to suffer from harm and violation of their ADA rights. These harms will continue unless enjoined by this Court.

**FOURTH CLAIM**
**Rehabilitation Act**
**(29 U.S.C. §791-794)**

111.  The Plaintiffs reallege and incorporate the allegations of the preceding paragraphs 1 to 110 as though fully set forth at this point.

112.  This claim is brought under Section 504 of the Rehabilitation Act (RA), 29 U.S.C. §701, et seq. and 29 U.S.C. §791-794, et seq., and its implementing regulations.

113. Defendant UDOC is a program or activity receiving federal financial assistance. 29 U.S.C. §794.

114. The Defendants exclude Plaintiffs and the Plaintiff Class- all qualified individuals with disabilities – from participation in, and denies those individuals the benefits of, programs or activities, solely by reason of the individuals' disabilities. 29 U.S.C. §794(a); 28 C.F.R. §42.503(a).

115. The Defendants utilize criteria or methods of administration that either purposely or in effect discriminate on the basis of handicap, and defeat or substantially impair accomplishment of the objectives of the Defendants' programs or activities with respect to handicapped persons. 28 C.F.R. §42.503(b)(3).

116. The Defendants have known about the violations noted herein but have failed to correct them, thereby exhibiting deliberate indifference to the rights of the Plaintiffs and the Plaintiff Class.

117. As a direct and proximate result of this exclusion, Plaintiffs and the Plaintiff Class have suffered and continue to suffer from harm and violation of their RA rights. These harms will continue unless enjoined by this Court.

**FIFTH CLAIM**
**Declaratory Judgment Act**
**(28 U.S.C. § 2201(a))**

118. The Plaintiffs reallege and incorporate the allegations of the preceding paragraphs 1 to 117 as if fully set forth at this point.

119. There presently exists an actual controversy between the parties regarding whether the Defendants' policies are lawful under federal and state law. The Plaintiffs

are informed and believe that the Defendants continue to enforce their policies, as described, to the detriment of Plaintiffs and the Plaintiff Class. This controversy requires a declaration from this Court as to the rights of the respective parties, and the lawfulness of the Defendants' practices.

120.  As a direct and proximate result of the Defendants' actions and inactions, the Plaintiffs and the Plaintiff Class have suffered and, unless the declaratory and injunctive relief prayed for is provided, likely will suffer injuries and complications resulting from the failure to treat their HCV with effective DAA drugs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and a class of similarly situated individuals, seek Judgment as follows:

1.     Issuance of a judgment declaring that the Defendants have exhibited deliberate indifference to the serious medical needs of the Plaintiffs and the Plaintiff Class and have violated the rights of the Plaintiffs and the Plaintiff Class to be free from cruel and unusual punishment via their policy of withholding treatment with DAA drugs from inmates diagnosed with HCV, all in violation of both the Eighth Amendment to the United States Constitution, and Article 1, Section 9 of the Utah Constitution;

2.     An order certifying this case as a class action, with the class defined under Rule 23(b)(2) as all current and future prisoners in UDOC custody who have been, or will be, diagnosed with chronic HCV;

27

3.      A judgment declaring that the Defendants have violated the rights of the

Plaintiffs and the Plaintiff Class under the Americans with Disabilities Act and the

Rehabilitation Act;

4.      Entry of a preliminary and a permanent injunction ordering the Defendants

to, among other things, 1) immediately provide DAA medications to the Plaintiffs; and

2) develop and adhere to a plan to provide DAA medications to all UDOC prisoners

with chronic HCV, consistent with the prevailing standard of care;

5.      A preliminary and a permanent injunction requiring the Defendants to,

among other things, 1) properly screen, evaluate, monitor, and stage UDOC prisoners

with HCV (including screening for liver cancer where appropriate); 2) provide routine

opt-out testing for HCV to all UDOC prisoners; 3) develop and adhere to a policy

allowing UDOC prisoners with chronic HCV to obtain liver transplants if needed; 4)

provide the Plaintiffs and the Plaintiff Class an appropriate and accurate assessment of

the level of fibrosis or cirrhosis they have, counseling on drug-drug interactions, and

ongoing medical care for complications and symptoms of HCV; and 5) modify the

exclusions from HCV treatment based on life expectancy and time remaining on

sentence to reflect an appropriate individual assessment;

6.      An order enjoining the Defendants from taking any action to interfere with

the Plaintiffs' right to maintain this action, or from retaliating in any way against the

Plaintiffs for bringing this action;

7.      Compensatory and punitive damages for the Plaintiffs according to proof;

8.    An order retaining jurisdiction over this matter to ensure that the terms of

any injunction are fully and timely implemented;

9.    Any further, appropriate injunctions to prevent the future deprivation of the

rights of the Plaintiffs and the Plaintiff Class;

10.    An award of Plaintiff's attorneys' fees, costs, and litigation expenses under 42

U.S.C. §12205, 29 U.S.C. §794a, 42 U.S.C. §1988, the Utah Constitution, and other

relevant provisions of law; and

11.    Such other and further relief as the Court may deem equitable and just under

the circumstances.

RESPECTFULLY SUBMITTED THIS 22nd DAY OF JANUARY 2020,

*/s/ Stewart Gollan*

_____

Stewart Gollan, USB # 12524
GOLLAN LAW, PLLC
75 East 400 South, Suite 300
Salt Lake City, Utah 84111
sgollanlaw@gmail.com
Telephone: (801) 413-3406


*/s/ William L. Schmidt*[2,3]

_____

William L. Schmidt, SBN 206870
WILLIAM L. SCHMIDT, ATTORNEY
        AT LAW, P.C.
P.O. Box 25001
Fresno, CA 93729
legal.schmidt@gmail.com
Telephone: (559) 261-2222

---

[2] electronically signed on behalf of William L. Schmidt, with express permission
[3] Admitted *Pro Hac Vice*

*/s/ R. Shane Johnson*[4]

_____

R. Shane Johnson
R. SHANE JOHNSON, PLLC
24 D Street

Salt Lake City, Utah 84103
shane@utahdefense.com
Telephone: (801) 364-2222

[4] electronically signed on behalf of R. Shane Johnson, with express permission

## CERTIFICATE OF SERVICE

I certify that on the 22nd day of January 2020 I caused a copy of the foregoing

(PROPOSED) PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES,

DECLARATORY RELIEF AND INJUNCTIVE RELIEF to be transmitted to the following *via*

the Court's ECF system:

> VANESSA R. WALSH (16180)
> DARIN GOFF (1355)
> Assistant Utah Attorneys General
> SEAN D. REYES (7969)
> Utah Attorney General
> 160 East 300 South, Sixth Floor
> P.O. Box 140856
> Salt Lake City, Utah 84114-0856
> Telephone: (801) 366-0100
> E-mail: vwalsh@agutah.gov, dgoff @agutah.gov
> *Attorneys for State Defendants*
>
> WILLIAM L. SCHMIDT, SBN 206870[5]
> legal.schmidt@gmail.com
> WILLIAM L. SCHMIDT, ATTORNEY
> AT LAW, P.C.
> P.O. Box 25001
> Fresno, CA 93729
> Telephone: (559) 261-2222
> Facsimile: (559) 436-8163
>
> *Attorney for Plaintiffs and Proposed Plaintiff Class*
>
> R. SHANE JOHNSON, Utah Bar No. 14217
> shane@utahdefense.com

---

[5] Admitted *Pro Hac Vice*

R. SHANE JOHNSON, PLLC
24 D Street
SALT LAKE CITY, UTAH 84103
Telephone: (801) 364-2222

*Attorney for Plaintiffs and Proposed Plaintiff Class*

*/s/ Stewart Gollan*

_____
Stewart Gollan
*Attorney for Plaintiffs and Proposed*
*Plaintiff Class*