IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| RONALD MAY, TOBY GARCIA, TODD MULDER, and CURTIS ELLIS, individuals,<br><br>Plaintiffs,<br><br>v.<br><br>UTAH DEPARTMENT OF CORRECTIONS; MIKE HADDON, in his official capacity as UDOC Interim Executive Director; TONY WASHINGTON, in his individual and official capacity as UDOC Clinical Services Director; and DOES 1-10,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>2:18-cv-854-RJS-CMR<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Cecilia M. Romero |

This suit concerns prisoners' rights. Plaintiffs Ronald May, Toby Garcia, Todd Mulder, and Curtis Ellis—all incarcerated by the Utah Department of Corrections (UDOC)—suffer from Hepatitis C (Hep C). They argue UDOC's policy of restricting vital, potentially life-saving Hep C drug treatments to only the most sick inmates violates state and federal law, including their constitutional rights. Plaintiffs seek to act as class representatives in this suit to represent all current and future UDOC prisoners who suffer (or will suffer) from Hep C. Before the court is Plaintiffs' unopposed Motion for Class Certification. For the reasons given below, the court GRANTS the Motion.

**BACKGROUND**

Plaintiffs May, Garcia, Mulder, and Ellis are all adults currently incarcerated by UDOC.[1] Each has been diagnosed with Hep C,[2] a blood-borne disease that inflames and damages the

---

[1] Dkt. 38 (Am. Compl.) ¶ 4.

[2] *Id.*

liver.[3] Chronic Hep C can lead to liver inflammation, fibrosis, and cirrhosis.[4] These conditions significantly impair liver function and cause a range of complications from fatigue and weakness to kidney disease and liver cancer.[5]

Until 2011, treatments for Hep C required substantial time (up to 48 weeks), had numerous side effects, and failed to cure most patients.[6] That changed in 2011 when the FDA approved new oral medications known as direct-acting antiviral (DAA) drugs.[7] These new drugs require a treatment regime of only 12 weeks, have fewer side effects, and cure 90 to 95% of Hep C patients.[8] Health guidelines endorsed by the Centers for Disease Control and Prevention (CDC) recommend immediate treatment with DAA drugs for anyone with Hep C.[9] Delay in treatment increases the risk that treatment will not be effective.[10]

Under UDOC's Hep C treatment protocol (the Protocol), few Utah prisoners receive DAA medications.[11] Noting the "tremendous financial burden" of supplying prisoners with the new DAA drugs, the Protocol states that "[o]nly the most ill patients will qualify for treatment" and that "[n]ot everyone with hepatitis C needs treatment right away."[12] Plaintiffs allege this policy causes "the unnecessary and wanton infliction of pain and unreasonable risk of serious damage to the health of UDOC prisoners[.]"[13] Each named Plaintiff sought and was denied

---

[3] *Id.* ¶ 10.
[4] *Id.* ¶¶ 13–16.
[5] *See id.*
[6] *Id.* ¶ 25.
[7] *Id.* ¶ 26.
[8] *Id.* ¶ 27.
[9] *Id.* ¶¶ 29–30. As of 2016, all 50 states cover at least one DAA drug regimen for their Medicaid patients. *Id.* ¶ 31.
[10] *Id.* ¶ 31.
[11] *Id.* ¶ 39.
[12] *Id.*
[13] *Id.* ¶ 38.

treatment by UDOC with DAA drugs despite experiencing serious symptoms from Hep C.[14] Plaintiffs allege UDOC's policy of denying DAA drug treatments to prisoners with Hep C violates the Eighth Amendment of the U.S. Constitution, Article I of the Utah State Constitution, the Americans with Disabilities Act (ADA), and the Rehabilitation Act.[15]

After filing their Complaint in October 2018,[16] Plaintiffs filed a Motion for Class Certification on April 18, 2019.[17] Defendants agreed Plaintiffs "met the standard for certifying the requested class," provided Plaintiffs filed an amended complaint containing sufficient factual allegations demonstrating the class representatives properly exhausted their administrative remedies.[18] Before amending their Complaint, Plaintiffs filed a Motion for Preliminary Injunction.[19] The parties stipulated to stay briefing on the Motion for Preliminary Injunction, however, until the court decided the Motion for Class Certification.[20] Once Plaintiffs filed their Amended Complaint in January 2020,[21] the court granted the parties' joint Motion to Stay.[22] Plaintiffs' unopposed Motion for Class Certification is now ripe for review.

---

[14] *Id.* ¶¶ 51–55.

[15] *See id.* ¶¶ 83–117.

[16] Dkt. 2.

[17] Dkt. 19.

[18] Dkt. 20.

[19] Dkt. 31.

[20] Dkt. 32.

[21] Dkt. 38. The Amended Complaint added sufficient factual allegations that each class representative exhausted his administrative remedies. *See id.* ¶¶ 62, 68, 72, 78.

[22] Dkt. 41.

## LEGAL STANDARD

Rule 23 of the Federal Rules of Civil Procedure governs requests for class certification.[23] Notwithstanding that Plaintiffs' Motion is unopposed, class certification is proper "only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'"[24] Both Rules 23(a) and 23(b) "set forth clear, stringent guidelines for certification of a class action."[25] If the court concludes a plaintiff has met the threshold requirements laid out in Rule 23(a), "it must then examine whether the action falls within one of three categories of suits set forth in Rule 23(b)."[26] In assessing Plaintiffs' Motion, the court "accept[s] the substantive, non-conclusory allegations of the complaint as true."[27]

## ANALYSIS

Plaintiffs seek certification of the following class: "All current and future prisoners in UDOC custody who have been diagnosed, or will be diagnosed, with chronic [Hep C]."[28] The court begins by determining whether Plaintiffs satisfy the requirements under Rules 23(a) and 23(b). Concluding they do, the court then appoints class counsel and directs counsel to provide notice of the certification and action to potential class members.[29]

---

[23] *See Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir. 1982) (internal quotation marks and citations omitted) ("In determining the propriety of a class action, the question is not whether the . . . plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.").

[24] *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011)); *see also Shook v. El Paso Cty.*, 386 F.3d 963, 971 (10th Cir. 2004) (acknowledging the court must "carefully" apply Rule 23(a)'s requirements).

[25] *Rex v. Owens ex rel. Okla.*, 585 F.2d 432, 435 (10th Cir. 1978).

[26] *Adamson v. Bowen*, 855 F.2d 668, 675 (10th Cir. 1988).

[27] *Vallario v. Vandehey*, 554 F.3d 1259, 1265 (10th Cir. 2009) (citations omitted).

[28] Dkt. 19 at 1.

[29] *See* Fed. R. Civ. P. 23(c)(2)(A), (g)(1).

## I. Requirements Under Rule 23(a)

Under Rule 23(a), the court must decide if all four of the following prerequisites are met:

(1) Numerosity: "the class is so numerous that joinder of all members is impracticable";

(2) Commonality: "there are questions of law or fact that are common to the class";

(3) Typicality: "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and

(4) Adequacy of representation: "the representative parties will fairly and adequately represent the interests of the class."[30]

The court concludes Plaintiffs have met all four prongs.

### A. Numerosity

There is "no set formula to determine if the class is so numerous that it should be so certified," and, unlike some circuits, the Tenth Circuit has never adopted a presumption of numerosity at a certain number of presumptive class members.[31] Indeed, some classes have been certified with as few as seventeen members,[32] while others have been denied with as many as eighty-four members.[33] In determining whether joinder is impracticable, courts consider "the nature of the action, the size of the individual claims, and the location of the members of the class."[34] Courts also consider the size of the proposed class and judicial economy.[35] Plaintiffs bear the burden of establishing that the class is so numerous as to make joinder impracticable.[36]

---

[30] *Trevizo v. Adams*, 455 F.3d 1155, 1161–62 (10th Cir. 2006) (quoting Fed. R. Civ. P. 23(a)).

[31] *Id.* at 1162 (quoting *Rex*, 585 F.2d at 436).

[32] *See Rex*, 585 F.2d at 436.

[33] *Trevizo*, 455 F.3d at 1162.

[34] *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1215 (10th Cir. 2014) (citation omitted).

[35] *See Yazzie v. Ray Vickers' Special Cars, Inc.*, 180 F.R.D. 411, 415 (D.N.M. 1998).

[36] *Trevizo*, 455 F.3d at 1162.

Plaintiffs advance numerous arguments concerning why they meet the numerosity requirement, including that the proposed class is markedly larger than other classes that have been certified, many unidentified and future prisoners that will be diagnosed with Hep C suggests the class will continue to grow, and certification will preserve judicial resources. The court agrees.

First, Plaintiffs have presented evidence there are likely more than 1,000 inmates with Hep C incarcerated by UDOC.[37] This large number weighs heavily in favor of certification.[38] Second, "[j]oinder of unknown individuals is certainly impracticable" and a class that includes "unknown, unnamed future members also weighs in favor of certification."[39] Here, Plaintiffs' proposed class includes UDOC prisoners who may not yet be aware they have Hep C and future prisoners with Hep C who will be incarcerated by UDOC. These unknown, current and future class members support the court's conclusion that joinder is impracticable. Finally, the alternative—adjudicating hundreds (and more likely thousands) of individual claims—would needlessly strain judicial resources. Proceeding as a class action will avoid duplicative discovery, including depositions of the same officials and repetitive production of documents. Plaintiffs have satisfied this prong of Rule 23(a).

---

[37] Dkt. 19 at 4. The CDC estimates approximately 1 in 3 of the roughly 2.2 million people in U.S. jails and prisons have Hep C. *Id.* As of 2017, UDOC housed approximately 6,200 inmates. *Id.* In other words, Plaintiffs' estimate of 1,000 inmates who suffer from Hep C is likely conservative.

[38] Courts may infer the size of a class where a plaintiff does not identify a specific number. *See Abercrombie & Fitch*, 765 F.3d at 1215 (taking judicial notice of the millions of Americans with disabilities and holding that "[i]t was therefore reasonable [for the district court] to infer that a substantial number of disabled people live in the 40 states where Hollister stores are located; that these people, like . . . many Americans, shop at malls, including the 250 malls with porched Hollisters; and that joining all of these people in one suit would be impracticable.").

[39] *Id.* (internal quotation marks and citation omitted).

### B. Commonality

To satisfy Rule 23(a)'s commonality requirement, "only a single question of law or fact common to the entire class" must be present.[40] While "[m]ere allegations of systemic violations of the law . . . will not automatically satisfy Rule 23(a)'s commonality requirement," it is enough if "a discrete legal or factual question common to the class . . . exist[s]."[41] That is, certification may still be proper even where the claims of individual putative class members differ factually.[42]

Plaintiffs identify a host of legal and factual questions common to the class. These include:

> 1) whether [Hep C] is a serious medical need; 2) whether the Defendants' policy and practice of not providing [Hep C] treatment constitutes deliberate indifference to serious medical needs in violation of the 8th Amendment; 3) whether the Defendants' policy and practice of not providing [Hep C] treatment runs contrary to the Unnecessary Rigors Clause of Article I, Section 9 of the Utah Constitution; 4) whether the Defendants have knowingly employed policies and practices that unjustifiably delay or deny treatment for [Hep C]; 5) whether Defendants have permitted cost considerations to improperly interfere with treatment of [Hep C]; 6) whether [Hep C] is a disability under the ADA; 7) whether medical services in prison are a program or service under the ADA; and; 8) whether the Defendants have discriminated against UDOC prisoners with [Hep C] on the basis of their disability by categorically denying them medical treatment, while providing treatment for other diseases and conditions such as HIV.

Any of these questions alone is likely sufficient to meet the commonality requirement. Together, they strongly weigh in favor of certification.

To be sure, factual differences undoubtedly exist between the members of the putative class. Some suffer from more severe health effects from Hep C depending on how long they have had the disease and how quickly their condition has deteriorated. Some members of the

---

[40] *D.G. ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010).

[41] *Id.*

[42] *Id.* (quoting *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982) ("Every member of the class need not be in a situation identical to that of the named plaintiff to meet Rule 23(a)'s commonality . . . requirement[].")).

7

class may have received treatment under UDOC's current Protocol. But these factual differences do not negate the numerous common legal and factual questions that must be decided over the course of this litigation. Accordingly, Plaintiffs have met Rule 23(a)'s commonality requirement.

### C. Typicality

The typicality analysis "tend[s] to merge" with the commonality determination just undertaken.[43] "[L]ike commonality, typicality exists where . . . all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances."[44] The interests and claims of the named Plaintiffs and class members "need not be identical."[45] Nor do differing fact situations of class members defeat typicality.[46]

Here, the named Plaintiffs' claims are typical of the claims of the putative class. Like other members of the class, Plaintiffs have been diagnosed with chronic Hep C, have been refused treatment by Defendants, and suffer from the same kind of medical complications and substantial risk of serious harm common to Hep C patients. Moreover, should Plaintiffs prevail on their claims that UDOC's policy of denying DAA drugs to most inmates with chronic Hep C violates state and federal law, that ruling would benefit all members of the proposed class. Plaintiffs have satisfied Rule 23(a)'s typicality requirement.

---

[43] *Abercrombie & Fitch*, 765 F.3d at 1216 (quoting *Wal-Mart*, 564 U.S. at 349 n.5).

[44] *Stricklin*, 594 F.3d at 1199.

[45] *Id.* at 1198.

[46] *Id.*

### D. Adequacy

In assessing adequacy, the court must consider two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"[47]

Concerning the first question, Plaintiffs have averred they know of no material conflicts of interest between the named Plaintiffs and their counsel and members of the proposed class. Nor does the court perceive any. And, as discussed above, the named Plaintiffs share their fellow class members' interest in seeking a judicial determination that UDOC's policies and practices related to the treatment of prisoners with Hep C is unlawful.

As to the second question, the court is confident the named Plaintiffs and their counsel will vigorously prosecute the action on behalf of the class for the same reasons just discussed. Further, Plaintiffs' counsel have demonstrated they have the experience and substantive knowledge of this area of law to serve the class effectively.[48] In short, the named Plaintiffs will fairly and adequately protect the interests of the class.

### II. Requirements Under Rule 23(b)

Having concluded Plaintiffs satisfy the prerequisites under Rule 23(a), the court turns to Rule 23(b). Plaintiffs seek certification under Rule 23(b)(2). Under this rule, a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."[49] Here, Plaintiffs seek injunctive relief requiring

---

[47] *Rutter & Willbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002) (internal quotation marks and citations omitted).

[48] *See infra* Part III.

[49] Fed. R. Civ. P. 23(b)(2).

Defendants to provide DAA drug treatments to the class as a whole. Because Defendants' actions apply generally to the class, final injunctive relief would be appropriate for the whole class. The court therefore certifies the class under Rule 23(b)(2) as defined by Plaintiffs. This certification applies to each of the five causes of actions asserted in the Amended Complaint.[50]

### III.  Class Counsel

"Unless a statute provides otherwise, a court that certifies a class must appoint class counsel."[51] Rule 23 requires the court to consider four factors in appointing class counsel: (1) the work counsel has done to identify or investigate potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class.[52]

Considering these factors, the court concludes Plaintiffs' current counsel is well suited to serve as class counsel. In addition to having identified and investigated the claims in the action, Plaintiffs' current attorneys have significant experience litigating complex civil rights claims, including suits related to prisoners' health.[53] Counsel have also demonstrated they will commit the resources necessary to represent the class. Accordingly, the court appoints William Schmidt, Stewart Gollan, and R. Shane Johnson as class counsel.

---

[50] Dkt. 38 ¶¶ 83–120.

[51] Fed. R. Civ. P. 23(g)(1).

[52] Rule 23(g)(1)(A)(i)–(iv).

[53] *See* Dkt. 19, Ex. A.

## IV. Notice

Unlike classes certified under Rule 23(b)(3), the court is not required to direct Plaintiffs to notify potential class members where certification is granted under Rule 23(b)(2).[54] Given that many of the putative class members are currently unknown, however, the court believes notice is warranted. Plaintiffs represented in their Motion they would provide each inmate held in Utah prisons with (1) written notice of the action, (2) the requirements for class membership, and (3) the procedure for opting out of the class.[55] Plaintiffs further stated they would cover reasonable costs related to the distribution of this notice.[56] The court generally approves of Plaintiffs' proposed approach. The court directs Plaintiffs to submit within twenty-one (21) days a proposed notice plan after meeting and conferring with Defendants. The proposed plan should include, among other things, the text of the notice contemplated, together with the procedures and schedule proposed. Plaintiffs shall bear the costs associated with the notice.

## CONCLUSION

For the reasons explained above, Plaintiffs' Motion for Class Certification is GRANTED.[57] Plaintiffs shall submit no later than twenty-one (21) days from today a proposed notice plan.

---

[54] *See* Fed. R. Civ. P. 23(c)(2)(A) (emphasis added) ("For any class certified under Rule 23(b)(1) or (b)(2), the court *may* direct appropriate notice to the class.").

[55] Dkt. 19 at 10. This notice would be provided to Defendants to distribute to prisoners. *Id.*

[56] *Id.*

[57] Dkt. 19.

Entry of this Order lifts the stay on proceedings related to Plaintiffs' Motion for Preliminary Injunction.[58] Defendants accordingly have twenty-one (21) days to respond to Plaintiffs' Preliminary Injunction Motion.[59]

SO ORDERED this 24th day of March 2020.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[58] *See* Dkt. 41.

[59] *See id.*